McKinney, J.,
delivered the opinion of the court.
This was an action of ejectment in the Circuit Court of Polk county.
The facts material to be noticed, in the determination of the principal questions arising upon the record, are as follows :
On the Sth day of September 1836, Robert Smith, for the use of Peter Hoyl, recovered a judgment against Wyatt Norris for $26 90, and costs of suit, before a Justice of the Peace of McMinn county.
Upon said judgment an execution issued, which was certified by the Clerk of the County Court of said county, as directed by the act of 1805, ch. 66, sec. 4.
On the 8th day of July 1842, said execution and certificate were presented to A. R. Stephenson, a Justice of the Peace of Polk county, who thereupon issued an execution for the amount of said judgment and costs, directed to any lawful *123 officer of said county of Polk, and commanding him that of the goods and chattels, lands and tenements, of the said Wyatt Norris, if to be found in said county, he should make the said sum of $26 90, together with costs, &c.
Upon said execution the officer made return, on the 11th July, 1842, no personal property of the defendant to be found in said county; and therefore levied said execution on “ two forty acre lots of land” in said county, of which a particular description is given in the return on fthe execution.
At the February Term 1843, of the Circuit Court of Polk, said A. R. Stephenson returned to said Court the execution produced and filed in his office against said Norris, from McMinn county, with the Clerk’s certificate thereon : also the execution issued by said Stephenson with the officer’s levy endorsed on the back thereof. And thereupon the Court proceeded to condemn said lands in satisfaction of said judgment and costs, and demanded an order of sale.
In pursuance of said order of sale, said two lots of land were sold by the Sheriff, on the 3rd day of June, 1843, to James Park, for the sum of $13 72.
The Sheriff in his return made upon the venditioni exponas, and also in the deed executed by him for said lots of land, recites, that “T. J. Hoyl, agent for Peter Hoyl, came forward within twenty days after sale, and raised the bid for said land to the amount of his debt and cost, and ordered me to make the title to John F. Hannah.” It appears that said Hannah advanced to said T. J. Hoyl, forty one dollars and eighty-two cents, being the amount of said judgment and costs, and the Sheriff, pursuant to the foregoing direction of T. J. Hoyl, executed a Sheriff’s deed to John F. Hannah, the lessor of the plaintiff, for said lots of land, which are the same described in the declaration.
Upon this title the lessor of the plaintiff rests his right to recover the possession of said lots of land.
*124 The objections to a recovery are numerous and insuperable.
1. The entire proceedings were wholly unauthorized by the act of 1805, ch. 66, sec. 4. That statute, in substance, provides, that where “ any execution that shall be issued by a Justice of the Peace, against the body, or goods and chattels, of any person, who may remove himself, or' goods and chattels, to any other county in this State, before the same is satisfied, in every such case, it shall and may be lawful for the person or persons, having such judgment and execution, to obtain the certificate of the Clerk of the county, setting forth that the magistrate who granted the judgment and execution was, at the time, an acting Justice of the Peace of his county, &c. And on producing said execution and certificate to any Justice of the Peace of the county to which any debtor may have removed himself, or property, it shall be sufficient to authorize any Justice of the Peace to issue an execution on the said judgment, for the amount of the judgment and costs, and the costs of the Clerk’s certificate.”
Neither in respect to the language, or object, of this statute, can any doubt he entertained as to its true meaning. The jurisdiction of a Justice being restricted, to the limits of his county, no execution, upon a judgment rendered by him, could have been issued to a different county, previous to the act of 1805: nor can this be done, since the passage of said act, except in the specific cases therein provided for, namely, where the defendant “may remove himself, or goods and chattels, to any other county” from that in which judgment was rendered. In such cases, the plaintiff may, in virtue of this act, pursue the person or effects of the defendant, (or, as the law now stands, his effects merely,) into any other county to which he may have removed himself, or property. This was the extent of the change of the former law intended to be effected by the act in question. The idea of a levy and sale of the real estate of the defendant, in the county to which he *125 had removed, under the provisions of this act, never entered the minds of its authors. The particular mischief to he remedied, contemplated no such thing; and the statute is not to be construed as altering the pre-existing law, beyond what was the obvious intention of the Legislature. The opposite construction is directly contrary to other statutory enactments on the subject of the levy and sale of real property, by virtue of a Justice’s judgment and execution.
In rendering judgment of condemnation and sale of land levied upon by execution issued by a Justice of the Peace, all the papers of the case, including warrant, or other leading process, judgment, execution and return thereon, must be returned to the court and incorporated into the record of such judgment. See act of 1840, ch. 161, sec. 1.
In the present case, no such thing either has been, or could have been done.
2. The Sheriff’s deed, upon its face, is wholly inoperative to vest any title to the lands in controversy in the lessor of the plaintiff. The deed recites, that the lands were sold to James Park for $13 72. It further recites, that T. J. Hoyl, agent of Peter Hoyl, the plaintiff in the judgment and execution upon which the lands were sold, within twenty days from the day of sale, raised the bid to the amount of the judgment and costs, and ordered the Sheriff to make the title to Hannah, the plaintiff’s lessor.
It has been adjudged by this court, and is now the settled law, that to vest the purchaser of real'estate, at an execution sale, with a legal title thereto, a conveyance from the Sheriff is indispensably necessary. And if such conveyance be made to a person other than the purchaser, it must appear, upon the face of the deed, to have been so made by the express authority and direction of such purchaser. We intend to intimate no opinion upon the point, whether or not a verbal direction would be sufficient to authorize the Sheriff to make *126 the conveyance to a person different from the purchaser : no decision of that question is called for upon the facts pre sented in this case. In the deed before us, no authority from the purchaser, of any sort, is assumed or stated for making the conveyance to the lessor of the plaintiff. Prima facie, the plaintiff in the execution, or his agent, possessed no such authority, and consequently could communicate none such to the Sheriff. And for this reason the deed must be held inoperative and void.
Upon the foregoing grounds, without noticing other objections, the judgment of the Circuit Court must be reversed.